IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRECK STEVEN BOYD,                                    Civil No.  04-3095-PA

      Plaintiff,                                           ORDER

  v.

LAKE COUNTY; et al.,

      Defendants.


PANNER, Judge:

      Plaintiff Breck Boyd, a juvenile at the time of the incident complained of, alleges that defendants Schutt and McDonald violated his property and/or liberty, and/or due process rights when they made certain allegedly defamatory statements at a public meeting about the circumstances of his arrest for sexual abuse of a minor.  He also alleges that the alleged denial of due process was as a result of a policy, custom, or practice of Lake County and, therefore, Lake County is liable.  Plaintiff also alleges pendent state claims. Before the court are motions for summary  judgment filed by defendant Schutt (#57) and by defendants Lake County and McDonald (#60), which are opposed by plaintiff.

I.  **BACKGROUND**

      Construing the facts in the light most favorable to the non-movant, the record

reveals the following[1]:

On November 8, 2002, Lake County Sheriffs deputies arrested Breck Boyd, (Am. Compl. pp. 2-3; Collins Aff. Ex. 3 Custody Report), and he was taken to the Klamath County Juvenile detention facility in Klamath Falls, Oregon, (Am. Compl. pp. 2-3; Collins Aff. Ex. 3 Custody Report; Ex. 14 Dep. B. Boyd 91:10-93:15).

On November 12, 2002, a Juvenile Petition was filed in the Juvenile Department of the Lake County Circuit Court alleging that Breck Boyd was within the jurisdiction of the juvenile court based upon violations of ORS 163.411(b), Unlawful Sexual Penetration in the First Degree, a Class A Felony; and ORS 163.427(a), Sexual Abuse in the First Degree, a Class B Felony.  (Collins Aff. Ex. 4 Petition.)

As a result of a November 12, 2002, hearing in Lake County Circuit Court, (Collins Aff. Ex. 14 Dep. B. Boyd 94:20-95:25; Ex. 17 Dep. L. Boyd 49:11-50:3; Ex. 18 Dep. D. Boyd 96:18-20), Breck Boyd was released from detention in Klamath Falls, (Collins Aff. Ex. 14 Dep. B. Boyd 94:20-95:25; Ex. 17 Dep. L. Boyd 49:11-50:3; Ex. 5 Order on Detention).

Defendant Sheriff Phillip McDonald and the Lake County District Attorney, David Schutt, organized a community meeting on November 20, 2002, in Paisley, to discuss community concerns.  (Am. Compl. p. 4; Collins Aff. Ex. 13 Dep. D. Schutt 26:7-13, 29:2-12, 30:16-19; Ex. 19 Dep. P. McDonald 6:17-19; Emerson Aff. Ex. 6 Dep. Schutt 9:19-25, 10:1-14; 63:21-25; Ex. 7 Dep. McDonald 6:5-25; 7:15-25.)

DA Schutt and Sheriff McDonald were aware before the meeting that they could not discuss the facts of the case because of juvenile confidentiality laws.  (Emerson Aff. Ex. 6

---

[1]  The Court includes only those facts necessary to its disposition of defendants' motions for summary judgment.

Dep. Schutt 31:20-25, 33:21-25; Ex. 7 Dep. McDonald 23:18-21.)  DA Schutt and Sheriff McDonald agreed that they would not discuss the facts of Breck Boyd's juvenile case at the town hall meeting.  (Collins Aff. Ex. 13 Dep. D. Schutt 33:21-24.)

At the November 20, 2002, town hall meeting, DA Schutt described the procedure of how information about a juvenile's case gets to him.  (Collins Aff. Ex. 13 Dep. D. Schutt 41:12-14.)

DA Schutt told the people at the meeting that when someone is accused of sexual abuse, his office does not simply look at the popularity of the accused or the number of people that the accused can marshal to his support.  The DA used as examples recent accounts of a priest having molested members of his church.  Even though the priest might be able to find a number of parishioners that would say that they couldn't believe or refused to believe the accusations, that isn't something that the DA's Office would base its decision of whether or not to prosecute.  (Collins Aff. Ex. 13 Dep. D. Schutt 45:2-14.)

DA Schutt addressed the perceived good character of a defendant by stating that a "guilty" priest accused of sexual abuse could get "1,000 character references." (Emerson Aff. Ex. 4 Dep. L. Boyd 68:4-17; Pl. Ex. 1 at 7 [Emerson Aff. Ex. 1 Aney Aff. & Ex.]; Emerson Aff. Ex. 6 Dep. Schutt 45:1-14.)

DA Schutt explained that since sex offenses almost exclusively happen without witnesses and people really aren't aware of the sexual habits of even their neighbors, he looks for a credible report.  (Collins Aff. Ex. 13 Dep. D. Schutt 45:2-14.)

DA Schutt likened the audience who supported Breck Boyd to the situation of the surprised neighbor who finds out that the nice person next door is a sexual predator. (Emerson Aff. Ex. 4 Dep. L. Boyd 68:9-13; Pl. Ex. 1at 4 [Emerson Aff. Ex. 1 Aney Aff. &

Order - Page 3

Ex.]; Emerson Aff. Ex. 6 Dep. Schutt 47:2-17.)

DA Schutt stated sex cases result from actions behind closed doors without witnesses and stated no one there knew about Breck Boyd's sex life. (Emerson Aff. Ex. 4 Dep. L. Boyd 68:14-17, 78:3-17; Pl. Ex. 1:7 [Emerson Aff. Ex. 1 Aney Aff. & Ex.].)

DA Schutt told the people at the meeting that in this case he had received a credible report from a therapist. However, he did not disclose any details of what was in the therapist's report. (Collins Aff. Ex. 13 Dep. D. Schutt 40:8-9; 41:8-14; Emerson Aff. Ex. 6 Dep. Schutt 40:8-15.)

DA Schutt told the audience at the public meeting there was no mention of a custody battle in connection with the alleged victim's sex abuse disclosures but Schutt recognizes that sex abuse disclosures given by a minor child in the context of a custody contest area are a "red flag" concern. (Emerson Aff. Ex. 6 Dep. Schutt 42: 16-25; Pl. Ex. 1:3 [Emerson Aff. Ex. 1 Aney Aff. & Ex.].)

DA Schutt told the crowd that Breck Boyd had been arrested for sexually abusing a minor girl that he was related to based on a letter from a therapist who was an expert in her field and who had talked to the little girl. (Emerson Aff. Ex. 4 Dep. L. Boyd 70:14-20, 71; Pl. Ex. 1:3, 5 [Emerson Aff. Ex. 1 Aney Aff. & Ex.].)

Sheriff McDonald said the initial report of the offense came in three weeks before the arrest and read from the arrest report to describe Breck Boyd being placed in handcuffs, belly chain and leg irons. (Lake Co. Ex. 1; Pl. Ex. 1:4 [Emerson Aff. Ex. 1 Aney Aff. & Ex.]; Emerson Aff. Ex. 6 Dep. Schutt 51:9-15.)

DA Schutt said that sex offenders tend to re-offend until they get caught. (Emerson Aff. Ex. 6 Dep. Schutt 39:13-25.) Linda Boyd remembers both DA Schutt and Sheriff

McDonald stating Breck Boyd was a danger to the community, and "he" called her son a sexual predator.  (Emerson Aff. Ex. 4 Dep. L. Boyd 79:6-17, 131:1-17.)

McDonald made the following statements:

"The abuse was discovered after the girl spent time with a therapist."

"Breck Boyd was arrested on a probable cause affidavit, which means that the officer perceived that he was 51 % or more sure that the person committed the crime based upon the statement."

And in response to the question as to why Breck Boyd's parents were not notified before he was interrogated,  McDonald replied:  "what if your child was the victim? Would you want us to tell the parents before interrogation?"

(Am. Compl. p. 4-5; Bloom Aff. Ex. 1 Dep. L. Boyd 68-82.)

## II. <u>DISCUSSION</u>

<u>Federal Due Process claims</u>

Defendants contend that plaintiff cannot show that any constitutional right was violated.  The individual defendants contend that they are entitled to qualified immunity.  Defendant Lake County contends that, because no constitutional violation can be shown, there can be no municipal liability.

Qualified immunity shields government agents from suit for damages if a reasonable official could have believed that his or her conduct was lawful, in light of clearly established law and the information possessed by the official.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 637-39, 641 (1987); <u>Hunter v. Bryant</u>, 502 U.S. 224 (1991) (per curiam).  Under the sequential analysis set forth by the Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the court first must ask whether the facts alleged by plaintiff, taken in the light most

favorable to plaintiff, establish a constitutional violation, Id. at 201; Robinson v. Solano County, 278 F.3d 1007, 1013 (9th Cir. 2002) (en banc).

A 42 U.S.C. § 1983 claim based upon a deprivation of liberty or property without due process has three elements:  "(a) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993).  Plaintiff contends that a property interest and liberty interest are created by ORS 419A.255 (2001).  He describes the rights as:  "the entitlement to have his reputation and emotional well-being protected and to have information about him and his juvenile proceeding kept confidential and/or privileged."  (Pl. Opp'n at 3.)

The statute upon which plaintiff relies, ORS 419A.255 (2001),[2] provided in pertinent

_____

[2] ORS 419A.255 (2001) provided in pertinent part:
   (1) The clerk of the court shall keep a record of each case, including therein the summons and other process, the petition and all other papers in the nature of pleadings, motions, orders of the court and other papers filed with the court, but excluding reports and other material relating to the child's or youth's history and prognosis.  The record of the case shall be withheld from public inspection but shall be open to inspection by the child or youth, parent, guardian, court appoint special advocate, surrogate or a person allowed to intervene in a proceeding involving the child or youth under ORS 109.119(1), and their attorneys.  The attorneys are entitled to copies of the record of the case.
   (2) Reports and other material relating to the child's or youth's history or prognosis are privileged and, except at the request of the child or youth, shall not be disclosed directly or indirectly to anyone other than the judge of the juvenile court, those acting under the judge's direction, service providers in the case and the attorneys of record for child or youth or the child's or youth's parent, guardian, court appoint special advocate, surrogate or person allowed to intervene in a proceeding involving the child or youth under ORS 109.119(1). . . . Any service provider in the case. school superintendent or attorney who examines or obtains copies of such reports or materials is responsible for preserving their confidentiality. . . .

part that the record of each juvenile case "shall be withheld from public inspection," and

"Reports and other material relating to the . . . youth's history or prognosis are privileged

and . . . shall not be disclosed . . . ."   ORS 419A.255(1)(2).   It further provided that,

"Except as otherwise provided in subsection (7) [relating to information indicating a clear

and immediate danger to another person or society], no information appearing in the

record of the case or in the reports or other material relating to the . . . youth's history or

prognosis may be disclosed to any person not described in subsection (2) [not applicable

_____

(3) Except as otherwise provided in subsection (7) of this section, no
information appearing in the record of the case or in the reports or other
material relating to the child's or youth's history or prognosis may be
disclosed to any person not described in subsection (2) of this section
without the consent of the court, . . . .
. . . .
(5) Notwithstanding any other provision of law, the following are not
confidential and not exempt from disclosure:
(a) The name and date of birth of the youth;
(b) The basis for the juvenile court's jurisdiction over the youth;
(c) The date, time and place of any juvenile court proceeding in which the
youth is involved;
(d) The act alleged in the petition that if committed by an adult would
constitute a crime if jurisdiction is based on ORS 419C.005;
(e) That portion of the juvenile court order providing for the legal
disposition of the youth when jurisdiction is based on ORS 419C.005;
(f) The names and addresses of the youth's parents or guardians; and
(g) The register described in ORS 7.020 when jurisdiction is based on ORS
419C.005.
. . . .
(7)(a) Information contained in reports and other materials relating: to a
child's or youth's history and prognosis that, in the professional judgment
of the juvenile counselor, caseworker, school superintendent, teacher or
detention worker to whom the information for the reports or other
materials has been provided, indicates a clear and immediate danger to
another person or to society shall be disclosed to the appropriate authority
and the person or entity who is in danger from the child or youth.
(b) An agency or a person who discloses information under paragraph (a)
of this subsection shall have immunity from any liability, civil or criminal,
that might otherwise be incurred or imposed for making the disclosure. . . .

here] without the consent of the court." ORS 419A.255(3). The Oregon Court of Appeals in Kahn v. Pony Express Courier Corp., 173 Or. App. 127, 141 (2001), determined that, according the terms "history" and "prognosis" in the statute their plain meanings, "By its terms, ORS 419A.255(2) provides that records relating to a child's medical, psychological, and social–that is, personal and family–background and predicted future condition or status are 'privileged.'" (Citing ORS 419B.325; State ex rel. Juv. Dept. v. S., 14 Or. App. 263 (1973)). Subsection (5) of the statute exempts certain information from the non-disclosure mandate, such as the name of the youth and the act alleged in the juvenile petition. ORS 419A.255(5).

Throughout his opposition, plaintiff refers to a violation of the state statute. However, a state official is not liable for a federal civil rights claim under section 1983 for violating state law; the conduct must deprive a plaintiff of a constitutional or federal right. Augustine v. McDonald, 770 F.2d 1442, 1444 n.2 (9th Cir. 1985).


Property interest

"The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law." Portman, 995 F.2d at 904. Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of

entitlement to it."  Id.  The determination, however, of whether state law creates a property interest for purposes of the Fourteenth Amendment is a question of federal constitutional law.  "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978) (quoting Roth, 408 U.S. at 577);  Paul v. Davis, 424 U.S. 693, 709 (1976));  Castle Rock, Colo. v. Gonzalez, 545 U.S. 748, 757 (2005);  Lawson v. Umatilla County, 139 F.3d 690, 692 (1998) ("State law, or some other independent source, establishes the parameters of an individual's substantive interest, but federal law determines whether that interest is a property interest protected by the Due Process Clause of the Fourteenth Amendment." (Citing Roth, 408 U.S. at 577).  The Supreme Court has stated that, traditionally, "a Roth-type property-as-entitlement cases" implicitly require that the protected property right have a readily ascertainable monetary value.  Castle Rock, 545 U.S. at 767.

The Court notes that plaintiff points to no case which has held that ORS 419A.255 creates a property interest protected by the Due Process Clause.  While ORS 419A.255 might create a reasonable expectation that certain information regarding a juvenile case will be confidential and will not be disclosed to the public, it does not appear that that expectation would be a protected interest under federal constitutional law.  The "entitlement" provided by ORS 419A.255 is not like a welfare benefit, Goldberg v. Kelly, 397 U.S. 254, 261-62 (1970), or property right in employment, Brady, 859 F.2d 1543, or other statutory entitlement traditionally associated with a protected property interest, and it does not have an ascertainable monetary value.  Plaintiff fails to show that a property

interest is created by ORS 419A.255.

Liberty interest

        "Liberty interests protected by the Fourteenth Amendment may arise from two
sources–the Due Process Clause itself and the laws of the States." Hewitt v. Helms, 459
U.S. 460, 466-67 (1983), overruled in part by Sandin v. Conner, 515 U.S. 460, 466-67
(1983).    Injury to a person's reputation, alone, is not a liberty or property interest
protected by the Due Process Clause, and is insufficient to state a cognizable § 1983 claim.
Hart v. Parks, 450 F.3d 1059, 1069-70 (9th Cir. 2006) (citing Paul, 424 U.S. at 711-12);
WMX Techs., Inc. v. Miller, 197 F.3d 367, 374 (9th Cir. 1999).   To state a claim for
defamation under section 1983, "plaintiff must show that the injury to his reputation was
inflicted in connection with the deprivation of a federally protected right." Hart, 450 F.3d
at 1070 (citing Gobel v. Maricopa County, 867 F.2d 1201, 1205 (9th Cir. 1989), abrogated
on another ground by Merritt v. County of Los Angeles, 875 F.2d 765 (9th Cir. 1989)).  A
liberty interest is implicated if the accuracy of a charge impairing a person's reputation for
honesty or morality is contested; there is public disclosure of the charge; and it is made
in connection with the alteration of some right or status recognized by state law.   Vanelli
v. Reynolds Sch. Dist. No. 7, 667 F.2d 773, 777-78 (9th Cir. 1982). This "stigma-plus" test
requires that damage to reputation occur in connection with the denial of some "'more
tangible'" interest.  Hart, 450 F.3d at 1070-71 (quoting Paul, 424 U.S. at 701-02); Miller
v. California, 355 F.3d 1172, 1179 (9th Cir. 2004).  The stigma-plus test can be satisfied if
plaintiff shows that the injury to reputation was inflicted "in connection with" the
deprivation of a federally protected right; or plaintiff shows that the injury to reputation

"caused" the denial of a federally protected right.  <u>Hart</u>, 450 F.3d at 1070.

As with an asserted property interest based on ORS 419A.255, plaintiff points to no case which has held that the statute creates a liberty interest protected by the Due Process Clause.  Plaintiff contends that a liberty interest is created because ORS 419A.255 contains explicit mandatory language creating a right, relying on <u>Hewitt v. Helms</u>, 459 U.S. 460, 471-72 (1983).  However, the Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 480-84 (1995), abandoned that methodology used in <u>Hewitt</u> which focused on language of a particular regulation and returned to a focus on the nature of the deprivation.[3]

Plaintiff also contends that ORS 419A.255 creates a privacy right for juveniles in the information about their case and is a protected liberty interest.  However,  plaintiff's argument that his privacy rights were violated is just another way of labeling a violation of ORS 419A.255; the law is clear that injury to reputation alone is insufficient to constitute a protected liberty interest and plaintiff refers to no denial of a separate tangible interest connected with any alleged injury to his reputation so as to meet the "stigma-plus" test.  <u>See</u> <u>Miller</u>, 355 F.3d at 1178-79 (plaintiff who was falsely named as a suspected child abuser on an official government index did not state § 1983 defamation claim; stigma-plus test not satisfied because he failed to show loss of a recognized property or liberty interest in conjunction with injury to reputation); <u>cf.</u> <u>Gobel v. Maricopa County</u>, 867 F.2d 1201, 1205 (9th Cir. 1989), <u>abrogated on another ground by</u> <u>Merritt v. County of Los Angeles</u>, 875

---

[3]  Further, the regulation at issue in <u>Hewitt</u> was a prison regulation addressed to the state actors who implemented the regulation.  Here, the statute at issue is a state statue which generally addresses non-disclosure of certain information–a youth's history or prognosis–which has been interpreted by the Oregon courts as medical, psychological, and social background and future predicted condition or status, but contains certain exemptions.  <u>See</u> <u>supra</u>.

F.2d 765 (9th Cir. 1989) (plaintiffs alleging invasion of privacy and defamation properly alleged the kind of "defamation-plus" injury necessary to state cognizable section 1983 claim because plaintiffs alleged that false statements were made in connection with illegal arrests).  Accordingly, no protected liberty interest is implicated on the facts shown in the record.

Substantive due process

"To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." Nunez v. City of Los Angeles, 147 F.3d 867, 872 (9th Cir. 1998) (fn. omitted).[4]  Because plaintiff does not show a deprivation of a protected property or liberty interest, his substantive due process claim fails.  See Portman, 995 F.2d at 908 (because discharged public employee had no property right in his job, his substantive due process claim failed); Nunez, 147 F.3d at 874.

Because the facts shown by plaintiff, taken in the light most favorable to him, do not establish a constitutional violation, the qualified immunity analysis ends. Saucier, 533 U.S. at 201.

Clearly established law

Even if it could be said that a due process violation occurred in the circumstances

---

[4]  The Ninth Circuit noted that, the mere showing of a deprivation is not enough to prevail; a plaintiff must show a deprivation of a fundamental right relating to marriage, family, procreation, and the right to bodily integrity, which represent the outer bounds of substantive due process protection.  Nunez, 147 F.3d 871 n.4.

shown in the record, which the court does not conclude, the law allegedly violated by defendants Schutt and McDonald was not clearly established.  Plaintiff bears the burden of showing that, at the time defendants Schutt and McDonald made the statements, the constitutional right at issue was clearly established.  Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 201.  The court must determine whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.   If the law does not put an officer on notice that his conduct was clearly unlawful, summary judgment based on qualified immunity is appropriate.  Id. at 202.

Here, it would not be clear to a reasonable officer that his conduct was unlawful in the circumstances and, therefore, the law allegedly violated was not clearly established.

Because the law was not clearly established, defendants Schutt and McDonald would be entitled to qualified immunity.  See Galen v. County of Los Angeles, 477 F.3d 652, 666 (9th Cir. 2007).


Lake County

Because no constitutional violation by a Lake County official has been shown, Lake County bears no municipal liability.  See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  In the circumstances of this case, this would be the case even if the Court found that defendants Schutt and McDonald were entitled to qualified immunity.  See e.g., Gibson v. County of Washoe, 290 F.3d 1175, 1186 n.7 (9th Cir. 2002).


Order - Page 13

State claims

Plaintiff alleges supplemental state claims. The court may decline to exercise supplemental jurisdiction over a state claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001) (citing San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d 470, 478 (9th Cir. 1998)). The court may dismiss without prejudice supplemental state claims. Brown v. Lucky Stores, Inc. 246 F.3d 1182, 1189 (9th Cir. 2001).

The Court has dismissed plaintiff's federal claims against defendants over which it has original jurisdiction. The Court exercises its discretion to decline supplemental jurisdiction over plaintiff's supplemental state claims. Plaintiff's supplemental state claims are dismissed without prejudice to refiling in state court.

## III.  ORDER

Based on the foregoing, it is ordered that defendant Schutt's motion for summary judgment (#57) and the motion for summary judgment by defendants Lake County and McDonald (#60) are granted; that plaintiff's supplemental state claims are dismissed without prejudice to refiling in state court; and that judgment be entered in favor of defendants as to the federal claims against them.

DATED this __1____ day of  June, 2007.


____/s/ Owen M. Panner_____
OWEN M. PANNER
UNITED STATES DISTRICT JUDGE

Order - Page 14